NIEMEYER, Circuit Judge,
dissenting:
In its effort to deal with Officer Purnell’s conceded mistake in shooting Henry while fleeing, the majority opinion blurs and applies, in a mix, three distinct standards of reasonableness — (1) the constitutional standard of reasonableness for measuring the use of deadly force; (2) the qualified immunity standard of reasonableness of an officer’s awareness or understanding of clearly established law; and (3) the reasonable-man standard for the common law tort of negligence. And to confuse matters more, the majority declines to address, in its analysis, Officer Purnell’s mistake because, it concludes, the mistake was limited to Officer Purnell’s “subjective beliefs or intentions [which] have no place in our constitutional analysis.” It thus disregards the substantial objective evidence of mistake, as well as the parties’ stipulation that Officer Purnell made a mistake.
In addition, the majority fails to recognize, when rejecting Officer Purnell’s qualified immunity, that no officer can have preexisting knowledge of a mistake before the mistake is made. The Supreme Court and our court have repeatedly acknowledged the fact that reasonable officers do, indeed, make mistakes in undertaking their duties, and when the mistake is an honest mistake, they are not held liable for violating the Fourth Amendment of the Constitution.
I am pleased to concur in Judge Shedd’s fine opinion, and I write separately here only to address the majority’s analysis, which, I respectfully submit, takes our qualified immunity jurisprudence far afield and hereafter will subject well-intentioned officers who make mistakes in the field to a level of liability that is unprecedented.
I
Officer Purnell, a 29-year veteran law enforcement officer, did, as the majority relates, attempt to serve Henry with an outstanding warrant for his arrest, as it was the officer’s duty to do. After Officer Purnell identified Henry, he told him he was under arrest and attempted to handcuff him. As Officer Purnell stated, “I had a hold, I don’t [recall] if it was the right or left arm, but I was trying to get him handcuffed.” At that point, Henry resisted and pushed Officer Purnell (a fact disputed by Henry) such that Officer Purnell “fell backwards” and caught himself on his *554 car and his right leg. Officer Purnell testified that he considered Henry’s action to be an assault on him. When Henry then ran, Officer Purnell pulled out what he thought was his Taser to stop Henry. When he fired it at Henry, however, Officer Purnell heard “a pop, and realized a mistake.” Purnell stated that at that point “I immediately ran to him. I told him I was sorry I pulled the wrong weapon. I picked up my mic which was carried on my thing here and radioed Somerset Central, advised them that a man had been shot.” Purnell then told the person that was with Henry to go to the house to get some ice and a wet rag to put on Henry’s forehead, and Purnell himself administered first aid. Purnell then remained with Henry until medical assistance and other officers arrived.
Henry does not disagree with these facts, except as to his pushing Officer Purnell. Indeed, in the district court he stipulated to the fact that Officer Purnell had mistakenly used his handgun instead of his Taser.
This fact of honest mistake should require our finding, as Judge Shedd has ably set forth in his opinion, that Officer Purnell’s seizure of Henry did not violate the Fourth Amendment. While Officer Purnell deliberately intended to use a Taser to stop Henry, his use of a handgun to shoot Henry was neither intended nor deliberate nor plainly incompetent, so as to constitute an unreasonable seizure under the Fourth Amendment.
II
The majority opinion, applying three separate standards of reasonableness, conducts a syllogism basically to ignore the fact of mistake. The opinion begins with the unremarkable observation that when a police officer shoots a fleeing suspect without probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others, the officer violates the suspect’s Fourth Amendment rights, citing Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Observing that “this case presents nothing to suggest Henry posed any threat whatsoever,” the majority concludes that Officer Purnell’s conduct in shooting Henry was therefore objectively unreasonable. Ante, at 531-32.
Turning to address the stipulated mistake, the majority states that “it is not the honesty of Purnell’s intentions that determines the constitutionality of his conduct; rather it is the objective reasonableness of his actions. ” Ante, at 532 (emphasis added). Rather than addressing any mistake, the majority opinion then makes what I suggest is the first major wrong turn. It justifies its conclusion that Officer Purnell’s seizure of Henry was constitutionally unreasonable by concluding that Officer Purnell’s actions were not reasonable under a tort standard of negligence. It begins this negligence analysis, “There were several facts that Purnell knew or should have known that would have alerted any reasonable officer to the fact that he was holding his Glock.” Ante, at 532. The opinion then devotes substantial attention to the facts of Officer Purnell’s negligence. It lists at least four to justify its finding: (1) “Purnell knew he carried his Taser in the holster in his right thigh, which was about a foot lower than the holster on his hip that held his Glock.” Ante, at 532. (2) “Purnell could feel the weight of the weapon he held in his hand, which, at about 38 ounces, was nearly twice the weight of his Taser.” Ante, at 533. (3) “Purnell knew the Taser had a thumb safety that had to be flipped to arm the weapon. The Glock he was holding had no thumb safety.” Ante, at 533. And, (4) “There was no evidence indicating that Purnell did not have the split-second he would have needed to at least glance at the weapon he was *555 holding to verify that it was indeed his Taser and not the Glock.” Ante, at 533.
After pointing out these facts, the majority opinion then concludes that Officer Purnell’s actions were “not objectively reasonable.” Ante, at 533. That conclusion would surely lead to the further conclusion that Officer Purnell was negligent because his actions were not those of a reasonable man. But this is not the conclusion that must be reached in order to decide whether Purnell should receive qualified immunity.
To determine whether Officer Purnell enjoyed qualified immunity, the dispositive inquiry would have to be whether a reasonable officer, in light of clearly established law, could reasonably believe that his actions were lawful. Saucier v. Katz, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). “The general rule of qualified immunity is intended to provide government officials with the ability ‘reasonably [to] anticipate when their conduct may give rise to liability for damages.’ ” Anderson v. Creighton, 483 U.S. 635, 646, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (emphasis added) (quoting Davis v. Scherer, 468 U.S. 183, 195, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)). This reasonableness inquiry related to the determination of qualified immunity is designed to objectively consider the knowledge or understanding that an officer would have about the law applicable to his actions in the circumstances he faced.
In other words, the qualified immunity analysis is meant to determine whether a reasonable officer in the defendant’s shoes should have known that his conduct was unlawful.
Under this standard, an officer who makes an honest mistake will always receive qualified immunity because he can never be on notice that his conduct is unlawful. Officer Purnell did not intend to use his gun as he set out to stop Henry with a Taser and mistakenly shot him with a gun. He could not have had prior knowledge and therefore understood that he was about to shoot Henry. In the language of the qualified immunity standard, he could not have “reasonably believed” or “reasonably anticipated” that his actions would violate clearly established law. The Supreme Court has acknowledged, “Federal officials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law.” Butz v. Economou, 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).
Moreover, the relevant conduct for purposes of determining qualified immunity would be the mistake, the act of Purnell’s reaching for the Taser and in fact pulling his gun. And of course, it can readily be concluded that there is no clearly established law governing when such a mistake would be unreasonable under the Fourth Amendment.
The majority opinion, however, fails to address the qualified immunity standard. It completes its syllogism, after concluding that Officer Purnell’s conduct was unreasonable in the tort sense, by (1) dismissing Officer Purnell’s mistake as “good intentions,” (2) concluding that Officer Purnell’s “subjective intent or beliefs play no role” in the constitutional analysis, and (3) returning to its premise, stating what is undisputed but irrelevant, “under prong two [of the qualified immunity analysis], it would have been clear to a reasonable officer that shooting a fleeing, nonthreatening misdemeanant with a firearm was unlawful,” a conclusion that never addresses the stipulated mistake.
In concluding that the mistake in this case could not be taken into account, because it was limited to Officer Purnell’s subjective intent, the majority commits its final error. It fails to recognize the exis *556 tence of the substantial objective evidence in the record, beyond Officer Purnell’s subjective state of mind, which indisputably pointed to the fact of mistake. As witnessed by numerous persons at the scene, after Officer Purnell shot Henry, Purnell immediately ran to Henry and apologized to him in the presence of others, telling Henry that he did not intend to shoot him with the gun. Purnell then called for medical assistance; requested ice and a wet rag for Henry’s forehead; administered first aid; and remained with Henry until assistance came. Were this not enough, Henry then stipulated in this case that Officer Purnell had indeed made a mistake.
Accordingly, in dismissing the mistake from the constitutional analysis because it was limited to Purnell’s subjective intent, the majority had to overlook the substantial objective evidence and the parties’ stipulation.
The fact of mistake in this case is, to be sure, an element that may render the traditional constitutional analysis for qualified immunity nonsensical because it is nonsensical to ask whether an officer reasonably believes that a mistake, about which he could have no advance knowledge, would violate clearly established law. Inherently, a mistake is not known or understood beforehand so as to enable an officer to have the understanding or belief about whether it would violate clearly established law.
Instead of grappling with the difficulty of fitting this core fact into the qualified immunity analysis, the majority simply deems the mistake to be irrelevant. And when the majority purports to apply the objective standard of constitutional reasonableness — a standard that measures a reasonable officer’s belief or understanding about the lawfulness of his actions in given circumstances — it ignores the primary factor going into the officer’s decisionmaking, the fact that he meant to shoot a Taser instead of a gun. Instead, it considers only the officer’s ultimate act of shooting the gun and then concludes that Officer Purnell was unreasonable.
The majority’s analysis also has the difficulty of now suggesting that an officer can violate the Fourth Amendment with merely negligent conduct.
We should be most reluctant to narrow the scope of qualified immunity as we do in this case. “[I]n determining what circumstances a court may consider in deciding claims of qualified immunity, we choose ‘between the evils inevitable in any available alternative.’ ... The qualified immunity doctrine recognizes that officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated.” Davis v. Scherer, 468 U.S. 183, 195, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) (emphasis added) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 813-14, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).
To be sure, this case presents a difficult analysis for the general qualified immunity jurisprudence. And its difficulty is reflected in the fact that the case has been before the Fourth Circuit three times, giving rise to divergent opinions among the judges of the court. But if this court is uncertain as to the state of the Fourth Amendment in cases involving mistake, surely no reasonable officer could have fully understood the limits of liability. See Ashcroft v. al-Kidd, — U.S. -, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011) (holding that an officer was not plainly incompetent and did not knowingly violate the law “not least because eight Court of Appeals judges agreed with his judgment in a case of first impression”).
*557 At bottom, I believe that this case undermines our qualified immunity jurisprudence and, unfortunately, subjects this officer to personal liability for making what was unquestionably an honest mistake in carrying out his official duties.
I would affirm for the reasons advanced by Judge Shedd.